UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRASHARD DELANEY #671563,

        Plaintiff,                                       Hon. Hala Y. Jarbou

v.                                             Case No. 2:25-cv-182

WAYNE ALLEN, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before me on Defendant Allen's Motion for Summary Judgment (ECF No. 20) and Defendant Voeks's Motion for Summary Judgment (ECF No. 29), both raising the affirmative defense of failure to exhaust administrative remedies. Plaintiff filed a response to Defendant Allen's motion (ECF No. 23), to which Defendant Allen did not reply. Plaintiff failed to file a timely response to Defendant Voeks's motion, although the affidavit he submitted in response to Defendant Allen's motion addresses the exhaustion issue Defendant Voeks raises. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that both motions be **DENIED**.

### I.   Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP), filed a complaint pursuant to 42 U.S.C. § 1983 on July 30, 2025, against several MDOC employees based on events that occurred at MBP on August 30, 2024. (ECF No. 1.) Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), the Court allowed Plaintiff's Eighth Amendment excessive force claims against Defendants Allen and John Doe #1, his Eighth

Amendment medical care claims against Defendants Allen and Voeks, and his state law claims to proceed.[1]  (ECF No. 7 at PageID.54.)

The Court previously summarized Plaintiff's allegations as follows:

Plaintiff alleges that he was moved to MBP after assaulting a staff member at another facility. [Compl., ECF No. 1, PageID.6.] He also explains that he is diabetic and, at the time of his transfer to MBP on August 30, 2024, at approximately 10:15 p.m. to 10:30 p.m., had not eaten for the day. (*Id.*)

Upon arriving at MBP, Plaintiff told a non-party nurse that he needed to see healthcare because he is diabetic and believed his sugar to be low. (*Id.*) He was then strip searched by Defendant Allen and non-party Sergeant Baldini. (*Id.*) During the search, Defendant Allen told Plaintiff, "You['re] in for a world hell here boy. . . Nurkala told us everything." (*Id.*) Plaintiff describes Nurkala as the Resident Unit Manager at the facility where Plaintiff had assaulted a staff member. (*Id.*) Plaintiff ignored Defendant Allen's comment and was taken to healthcare. (*Id.*, PageID.7.)

While in healthcare, Defendant John Doe #1 and non-party John Doe #5 entered the room. (*Id.*) A non-party nurse showed Plaintiff his blood glucose reading and told Defendant Allen, "He needs a snack bag. He's high risk and could go into a diabetic coma in his sleep." (*Id.*) Defendant Allen sad, "OK, I'll make sure he gets one." (*Id.*)

Shortly thereafter, while Plaintiff was being led out of healthcare to his housing unit, Defendant John Doe #1 stated, "Are we really going to get him a snack bag after he assaulted a C/O?" (*Id.*, PageID.8.) Defendant Allen didn't respond verbally. (*Id.*) Defendant John Doe #1 asked Plaintiff, "So, how dangerous are you?" (*Id.*) Plaintiff responded, "I'm not dangerous at all." (*Id.*) Plaintiff in turn asked Defendant John Doe #1, "How dangerous are you?" (*Id.*) To which Defendant John Doe #1 replied, "I'm about to show you!" (*Id.*) Defendant John Doe #1 then grabbed Plaintiff by his hair and yanked it three or four times so hard that Plaintiff's dreadlocks were torn from his head at the root. (*Id.*) Defendant Allen did not intervene. (*Id.*) Defendant John Doe #1 referenced Plaintiff's attack on another corrections officer before also kicking Plaintiff in the ankle. (*Id.*, PageID.9.)

Following Defendant John Doe #1's actions, Plaintiff asked Defendant Allen, "[T]hat's the second time he assaulted me[.] You['re] not going to say anything?" (*Id.*) Defendant Allen did not respond. (*Id.*)

---

[1] Plaintiff initially identified Defendant Voeks as Unknown Howie. (ECF No. 1.) Plaintiff subsequently amended his complaint to correctly identify Unknown Howie as Defendant Voeks. (ECF No. 18.)

Upon arriving at Plaintiff's cell, Plaintiff asked Defendant Allen, "Are you just going to let me get assaulted twice?" (*Id.*) Defendant Allen responded, "Shut the f*** up crying." (*Id.*)

Approximately thirty minutes later, Defendant [Voeks] brought Plaintiff sheets. (*Id.*, PageID.9–10.) Plaintiff told Defendant [Voeks] that he was a diabetic with low blood sugar and needed a snack bag. (*Id.*, PageID.10.) Defendant [Voeks] responded, "I know the nurse already told Sgt. Allen." (*Id.*) Approximately thirty minutes later, Defendant [Voeks] returned to Plaintiff's cell with two brown paper bags filled with hygiene items. (*Id.*) Plaintiff stated, "[t]his is not a snack bag." (*Id.*) Defendant Howie replied, "[H]e told you we was dangerous." (*Id.*)

(*Id.* at PageID.6–7.)

Defendants Allen and Voeks now seek summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies on his claims against them.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could

3

find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that

the record contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary

judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence

is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526

U.S. 541, 553 (1999).

### III.   Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative

remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See*

*Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate

exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to

exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant

bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the

Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion,"

defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford*

*v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by
> the PLRA to "properly exhaust." The level of detail necessary in a grievance to
> comply with the grievance procedures will vary from system to system and claim
> to claim, but it is the prison's requirements, and not the PLRA, that define the
> boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for

prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to

4

resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond their control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ W (effective 09/25/2023). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issue asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ JJ. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ NN. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motions, Defendants Allen and Voeks submit a Step III Grievance Report for Plaintiff dated September 17, 2025, which shows the grievances arising out of MBP that Plaintiff filed at Step I in August or September 2024 and exhausted through Step III prior to filing this action.[2] (ECF No. 21-3.) Defendants note that the Step III Report shows that Plaintiff filed one grievance at Step I during this time, MBP-24-10-1056-28e, which was rejected at all three steps of the grievance process. (ECF No. 21 at PageID.94.) Defendants contend that this

---

[2] Defendant Voeks did not file separate exhibits in support of his motion but instead adopted by reference the Step III Report that Defendant Allen filed with his motion. (ECF No. 30 at PageID.156.)

grievance could not have exhausted Plaintiff's claims against them based on their alleged conduct on August 30, 2024, because it: (1) was rejected as untimely; (2) concerned an incident that occurred on September 22, 2024; and (3) did not name either Defendant Allen or Defendant Voeks. (*Id.* at 101 (citing ECF No. 21-3 at PageID.126.)

Plaintiff does not dispute Defendants' assertion that MBP-24-10-1056-28e did not exhaust his claims, and he does not claim that he exhausted a grievance raising his claims against Defendants through all three steps of the grievance process. In fact, in his response, Plaintiff simply requests that the Court stay Defendants' motions for summary judgment and allow him to take discovery, not on the issue of exhaustion, but on the merits of his claims. (ECF No. 23 at PageID.132–33.) Nonetheless, Plaintiff references his affidavit attached to his motion. (*Id.* at PageID.132–33.)

In his affidavit, Plaintiff sets forth his efforts to exhaust his claims against Defendants concerning the August 30, 2024 incidents and the lack of response to his grievances. Plaintiff alleges that on September 4, 2024, he gave a step I grievance to RUM Moyale in an envelope addressed to Inspector Michael Leach. (ECF No. 24 at PageID.136.) Plaintiff further claims that he sent Grievance Coordinator Q. Bolton and Inspector Leach "numerous kites" inquiring whether they had received Plaintiff's grievances but received no response. (*Id.*) Plaintiff further claims that on September 19, 2024, he gave RUM Moyale the same Step I grievances during legal mail rounds in a sealed envelope addressed to Grievance Coordinator Q. Bolton, along with a note requesting that Bolton respond with a grievance receipt so that Plaintiff could confirm that the grievance was received. (*Id.*) Plaintiff alleges that he gave RUM Moyale the same Step I grievances again on September 24 and October 10, 2024. (*Id.* at PageID.136–37.) Plaintiff claims that on October 24, 2025, he turned in his goldenrod copy of the grievance concerning the August 30 incidents to RUM

Moyale and that on October 28, 2024, he received a Step I grievance in the mail and learned that the grievance office had not received any of his grievances. (*Id.* at PageID.137.) Plaintiff alleges that on October 31, 2024, he placed his legal mail individually in the bars of his cell "piece by piece," and that when RUM Moyale asked him why he had arranged his mail like that, he told her that Grievance Coordinator Bolton sent him a response stating that he had received only "one grievance and no kites" from Plaintiff. (*Id.* at PageID.137–38.) RUM Moyale asked, "Who did you give your grievances to[]?" Plaintiff responded, "You." Moyale then told Plaintiff that she had put all of his mail in the mailbox. (*Id.* at PageID.138.) Plaintiff states that he "can only conclude that [his] grievances, kites, [and] mail was destroyed." (*Id.*)

Plaintiff's response to the present motions is essentially that the grievance process was unavailable to him. In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court observed that a grievance process is unavailable where, among other things, "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. The Court noted that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also id.* at 644 n.3.

Defendants fail to address Plaintiff's affidavit or explain why it is insufficient to create a genuine issue of material fact as to whether the grievance process was available to Plaintiff or why the Court may not consider the affidavit in deciding their motions. Because Plaintiff's affidavit creates a genuine issue of material fact as to whether the grievance process was available to Plaintiff, Defendants fail to carry their summary judgment burden, and their motions should be denied.

## IV.    Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendants' motions for summary judgment.

Dated: March 23, 2026                                    /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).